[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by the plaintiff, Maria Liguore, CT Page 10586 with a two-count complaint dated December 15, 1993. The defendant, Brigitte Rainey, filed her answer dated February 23, 1994 on February 25, 1994. The plaintiff's first count of the complaint is brought in negligence and the second count in reckless and/or intentional tort.
The plaintiff testified that on December 17, 1991 she arrived home from work around A.M. She lived on the first floor of a two-family home she owned at 25 Wilcox Avenue, Meriden, Connecticut. The defendant lived on the second floor with a Claire Evans. The plaintiff testified that about 4:00 A.M. on December 17, 1991, she heard someone knocking on her front door and the defendant's front door. Both doors were side by side in the front of said house. The plaintiff informed the gentleman who was doing the knocking that if he did not stop she would call the police. The gentleman told the plaintiff that Claire called him. She testified she did not know the man and would not open the defendant's door as he requested. When the knocking continued the plaintiff called the Meriden Police. They arrived about 4:30 A.M. but the gentleman who was knocking on the door had already left the area. The plaintiff did not speak to the police officer but she saw him at her house. She stated she fell asleep about 6:00 A.M. that day. She then testified that between 8:30 and 9:30 A.M. someone was ringing her doorbell. She testified she went out her side door and around to the front of the house to see who was ringing her door bell. She saw the defendant and Claire Evans. She testified they started yelling at her. The plaintiff testified that after the yelling ceased Claire Evans had left to go to school. The plaintiff stated she was one foot from the door and facing it while she was trying to explain to the defendant why she called the police. She testified the defendant said "I'm moving out." The plaintiff testified that the defendant then went inside her own front door and slammed it, punching her fist through a pane of glass in said door. When the defendant did this, the pane of glass shattered and pieces of glass hit the plaintiff's face, according to her. The plaintiff stated that the front door was wooden with a large glass pane at the top of it and two smaller glass panes below the larger glass pane. The plaintiff testified it was one of the smaller panes the defendant punched. She also testified that the broken glass pane was above her eye level as she stood outside of the door looking at it. The plaintiff stated when the glass hit her face she felt something dripping and jell was coming out of her eye. The plaintiff said the defendant ran up the stairs to her apartment after the incident and that she (plaintiff) went in to her house to wash her eye. CT Page 10587 The plaintiff stated after she washed her eye she called a friend, Carol Riccio, who in turn called Cathy Vogel who lived near the plaintiff. Both women went to the plaintiffs house and took her to the emergency room at the Meriden Hospital.
The Meriden Hospital sent the plaintiff to Veterans Memorial Hospital by ambulance. At the latter hospital Doctor Marvin Gottlieb treated the plaintiff. He told her that if there was glass in her eye he would have to remove the eye. The plaintiff was operated on by Doctor Gottlieb for a repair of a corneascleral laceration in her left eye. She remained hospitalized overnight and was discharged the next day, on December 18, 1991. (Exhibit D4.) The plaintiff testified she saw Doctor Gottlieb weekly for her eye problem. She stated when she quickly developed a cataract after this incident she was referred to Doctor Peter Gloor of the Yale University School of Medicine by Doctor Gottlieb. She was seen by Doctor Gloor on February 11, 1992 (Exhibit A-28). He stated his impression was that Ms. Liguore's vision was limited by a cataract in the left; eye.
On March 4, 1992 the plaintiff had an operation performed by Doctor Marvin Gottlieb on he left eye at the Veterans Memorial Hospital in Meriden. This operation was an extracapsular cataract extraction performed in the left eye with insertion of a posterior chamber lens and revision of the corneal laceration with additional sutures placed and previous sutures removed. (Exhibit C-1). The plaintiff was discharged from the hospital on the same day as the operation.
The plaintiff testified that since this incident she has developed glaucoma in her left eye. She stated that Doctor Gottlieb referred her to Doctor Liggett of the Yale School of Medicine for this glaucoma problem. During this trial the plaintiff did not prove by a fair preponderance of the evidence that she suffers from glaucoma because of this incident.
After the cataract operation on March 4, 1992 in her left eye the plaintiff's vision in that eye improved to 20/40 (Exhibit A43). However, over the next five years her vision in her left eye declined to 20/400 vision (Exhibit A45). Doctor Mark S. Milner to whom the plaintiff was referred for consultation by Doctor Gottlieb could not explain the reason for the decline in vision. (Exhibit A45).
The plaintiff stated that prior to this incident she did not CT Page 10588 need glasses and that her last eye exam was when she was eighteen or nineteen years of age. She is now fifty years of age. She stated that her eyesight was good prior to this incident. She testified that today with her left eye she can only identify objects a little bit without glasses. She stated with glasses her left eye sight is very blurry when only using the left eye. Now she always wears glasses and for most of the time in addition thereto she wears dark glasses over her regular glasses because light bothers both her eyes since this incident. She testified that at work she wears both pairs of glasses as aforesaid plus she uses a magnifying glass.
The plaintiff testified that she started working at the US Surgical Company three months prior to this incident. She was earning approximately $260.00 net pay per week prior to her injury. She stated she was out of work five months due to her eye injury. She testified that during that time she collected $100.00 per week from a medical insurance policy. She returned to work full time after five months and has worked full time ever since. Her job prior and subsequent to her injury was assembling sutures for hospitals and doctors.
The defendant Brigitte Rainey also testified in this matter. She stated that she lived on the second floor of the plaintiff's house with Claire Evans. On December 16, 1991 she stated she went to bed about 10:00 P.M. and slept through the night. She stated she woke up about 7:00 A.M. on December 17, 1991 and saw a vehicle belonging to Lester John outside in the street. She became concerned because Mr. John was not around. She testified she grew up with Lester John and that he was a friend and also the father of Claire Evans' child. The defendant testified that she did not hear anyone knocking on her door during the night. She stated she saw the plaintiff between 8:30 A.M. and 9:30 A.M. that morning when Claire Evans was ringing the plaintiff's doorbell and she (plaintiff) came out to see why. The defendant stated that Ms. Evans and the plaintiff got into a verbal dispute about Ms. Evans' boyfriend. She said the plaintiff and Ms. Evans were shouting at each other for a short period of time. She further testified that all three of them were in close proximity to each other. The defendant then stated she said, "why are you shouting, leave us alone, why are you harassing us." The defendant stated the plaintiff then made racial slurs to her and told her "to get off my premises." The defendant stated she was devastated by these remarks and she told the plaintiff she would get out if she got her money back. The defendant stated that she CT Page 10589 then told the plaintiff to leave her alone and she ran in the house and shut the door. The defendant testified that when she left Ms. Evans and the plaintiff were still on the porch. She said when she was in the house going up the stairs she heard a scream. She stated when she heard the scream she looked back and saw glass and she ran down the stairs. The defendant said that when she got down the stairs Ms. Evans was there but the plaintiff had left. The defendant stated that she and Ms. Evans cleaned up the glass. She said the glass was on the inside of her apartment. She stated the door had one big window on top with three smaller windows underneath it. She said the small window on the right was broken. The defendant stated she closed the door with swift force and that she never put her fist through the glass pane on the door. The defendant also said she did not close the door by pushing on any of the glass panes. She stated on cross examination that as she got midway up the stairs to her apartment she heard screams, however, she did not know who screamed.
The plaintiff denied making any racial remarks to the defendant or Ms. Evans The plaintiff stated she did not recognize the man who was knocking on the two front doors at 4:00 A.M. The defendant stated the plaintiff knew Lester John because he had helped Ms. Evans and her move into the said apartment.
Upon inquiry from the court the defendant stated that Claire Evans was in the area but not available to testify because she was working and could not take time off to come to court. Upon further inquiry of the defendant the court learned that Ms. Evans was working in the health care field.
Police Officer Juan Matos of the Meriden Police Department testified in this matter. The police were called and Officer Matos was dispatched to Veterans Memorial Hospital where he interviewed the plaintiff and Cathryn Vogel about the incident. He testified that the plaintiff stated to him that on that morning when the defendant was told by her (plaintiff) to quiet down she (defendant) punched a glass pane in the door shattering the glass and causing some glass to hit the plaintiff's eye. After speaking with the plaintiff, Officer Matos stated he went to 25 Wilcox Avenue, Meriden and spoke with the defendant. He testified the defendant stated to him she did not punch glass and that the glass broke when she slammed the door. (Exhibit J). Officer Matos told the defendant that the plaintiff might lose her eye. The defendant said "it's too bad if she (Maria Liguore) CT Page 10590 loses her eye. That's what she gets for being nosey." From the police report (Exhibit J) it was apparent that the defendant was upset that the plaintiff had called the police at 4:00 A.M. on December 17, 1991.
The plaintiff introduced a life table (Exhibit I) that showed that the plaintiff had a life expectancy of thirty-one (31) years to live as of the date of trial. The plaintiff also submitted a list of medical expenses the plaintiff incurred as a result of her injury. These expenses totalled $25,490.61 and are set forth in Exhibit H attached hereto. The plaintiff did not make a claim for lost wages.
After hearing the evidence the court finds that the plaintiff has sustained her burden of proof by a fair preponderance of the evidence as to the first count of her complaint. As to the second count in her complaint the plaintiff failed to sustain her burden of proof and the court finds the issues on that count for the defendant.
From the evidence the court finds that the plaintiff sustained a very severe injury to her left eye as a result of the actions of the defendant whereby she punched a pane of glass causing the glass to hit the plaintiff in the left eye. This occurred on December 17, 1991. As a direct result of the defendant's action the plaintiff has lost most of the use of her left eye and this court finds that loss to be permanent.
The court awards the plaintiff and orders the defendant to pay "economic damages" of $25,490.61 and non economic damages of $200,000.00 for total damages of $225,490.61 plus costs. There was no evidence that this award of economic damages should be reduced as provided in Connecticut General Statute § 52-225a. If this be the case then counsel are ordered to contact this court within seven (7) days of receipt of this memorandum so that a hearing may be scheduled to take up that issue. Judgment may enter accordingly.
William J. Sullivan, Judge
SCHEDULE "A"
Ophthalmic Consultants, P.C., Marvin Gottlieb, M.D., 116 Cook Avenue, Meriden, Connecticut 06451: CT Page 10591
 12-17-91 $2,529.00 1-2-92 275.00 2-27-92 56.00 2-27-92 289.00 1-23-93 66.00 3-4-92 2,656.00 3-4-92 1,328.00 3-4-92 531.00 3-4-92 265.00 6-30-7-10-92 112.00 7-2-11-19-92 126.00 7-28 — 8-20-92 84.00 11-19-92 42.00 11-21-92 1,098.00 1-23-3-8-93 132.00 3-8-93 66.00 6-10-93 44.00 7-1-93 44.00 7-1-93 30.00 9-13-93 44.00 9-30-93 44.00 10-13-93 83.00 12-17-93 49.00 1-10-94 77.00 1-12-94 46.00 4-11-94 46.00
Anesthesia Services of Meriden, P.C., P.O. Box No. 374, Glastonbury, Connecticut 06033:
 12-17-91 900.00 3-4-92 900.00
Radiology Clinics, P.C., P.O. Box No. 2460, Meriden, Connecticut 06450:
 12-17-91 278.00 9-27-93 78.00
Veteran's Memorial Medical Center, One King Street, Meriden, Connecticut 06451:
 12-17-18-91 5,259.68 3-4-92 4,967.33
CT Page 10592
Prescriptions:
 12-18-29-91 58.85 1-3-3-7-93 118.59 3-14-5-16-92 179.44 3-8-4-13-93 89.05 3-10-12-11-93 236.67
J. Laccone, 1125 Dixwell Avenue, Hamden, Connecticut:
1-4-92 60.00
Yale School of Medicine, 333 Cedar Street, New Haven, Connecticut:
 2-5-92 565.00 2-24-92 55.00 6-18-92 140.00 6-25-92 305.00
Yale New-Haven Hospital, 20 York Avenue, New Haven, Connecticut:
6-18-6-30-92 189.00
J. Kaplan, M.D., 116 Cook Avenue, Meriden, Connecticut 06451:
 2-28-92 138.00 4-13-93 45.00 4-13-9-27-93 135.00 11.00
TOTAL OF ALL MEDICALS: $25,490.61